ADAMS STATE REVENUE AGENT *v.* LAMB-FISH LBR. CO.

[60 South. 645,]

1. MUNICIPAL CORPORATIONS.  *Taxation.  Exemptions.  Manufactories.*
   *Code 1906, section 3347.  Constitution 1890, section 192.*

   A municipal corporation has no power under Code 1896, section 3347,
   as authorized by Constitution 1890, section 192, to exempt by ordi-.
   nance an existing and going manufactory from municipal taxation,
   in consideration of the owners not appealing from an ordinance
   extending the corporate limits to include it.

2. SAME.

   And in case it does pass such an ordinance the municipality is not
   estopped thereby to collect municipal taxes on such manufactory.

OPINION ON SUGGESTION OF ERROR.

3. MUNICIPAL CORPORATIONS.  *Extension of limits.  . Collateral attack.*
   *Code 1906, section 3303-3305.*

   An ordinance of a municipal corporation annexing territory to a town
   cannot be collaterally attacked, because of its municipal authorities
   not having, as provided by Code 1906, section 3305, inquired into
   the fact of publication and notice of the ordinance of extention,
   and adjudged that the same was made according to law, by one
   who has waived his right of appeal under section 3303 of the Code
   of 1906, from the ordinance.

APPEAL from the chancery court of Tallahatchie county.
HON. M. E. DENTON, Chancellor.

Suit by Wirt Adams, State Revenue Agent, for the use
of the town of Charleston against the Lamb-Fish Lumber
Company.   From a judgment for defendant, complainant
appeals.

The facts are fully stated in the opinion of the court.

*May & Sanders*, attorneys for appellant.

The exemption ordinance is essentially a nullity for
several reasons of substance and cannot operate to con-

firm the exemption claim, and even though the ordinance had been properly framed, adopted and published and applied to property within the jurisdictional limits of the municipality. As we proceed to discuss the questions involving the substance of the exemption claim, it is well enough to bear in mind the general rule governing construction of exemption claims as approved in the case of *Y. & M. V. R. R. Co.* v. *Thomas,* 65 Miss. 562, as follows: "Statutes exempting persons or property from taxation, being in derogation of sovereign authority and of common right, are according to all authorities, strictly construed. As taxation is the rule and exemption the exception, the intention to create an exemption must be expressed in clear and unambiguous terms, and it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain. Legislation which relieves any species of property from its due proportion of the burdens of government, must be so clear that there can be neither reasonable doubt nor controversy in regard to its meaning." Applying this rule we call the court's attention to the fact that the manufactory sought to be exempted from taxation had been established and was in operation prior to the adoption of the so-called exemption ordinance. Section 3347, Code 1906, under which this exemption is claimed, begins with the significant words "To aid and encourage the establishment of manufactories," etc. We submit that the language of the statute clearly implies that it was the thought and purpose of the legislature, acting under the authority conferred by section 192 of the Constitution, to place in the hands of municipal authorities a means whereby they could draw to such municipalities, manufactories, and induce them to locate and develop manufacturing enterprises in municipalities, the substantial inducements being the exemption from municipal taxation. If this was the purpose of such legislation, and that construction is justified by the language of the statute, then it was never intended to

authorize municipal authorities to legislate a gift or bonus of taxes to an enterprise already in existence.  Now, if the language clearly means that, of course, no exemption could be held under this ordinance; and if the language is ambiguous and may mean that, and may not mean that, then the case of *Railroad Co.* v. *Thomas, supra,* the exemption being "in derogation of the sovereign authority and of common right," must be denied.  In the case of *Yocona Cotton Mills* v. *Duke,* 71 Miss. 790, it was held that the ordinance of the constitutional convention of 1890 exempting certain factories from taxation for a period of ten years, did not apply to existing factories.  But if the court should resolve the doubt as to the legislative intent in favor of the exemption and against the rule in such cases as laid down in *Railroad Co.* v. *Thomas, supra,* we still maintain that the ordinance is void because it is class legislation, as it applies specially, solely and exclusively to the Lamb-Fish Lumber Company and its benefits and exemptions are not extended to other persons or corporations of the same class and in a like situation with the Lamb-Fish Lumber Company, and the exemption claimed is therefore obnoxious to section 112, of the Constitution of Mississippi, requiring taxation to be equal and uniform.  It is also obnoxious to the fourteenth amendment of the constitution of the United States because it denies to others the equal protection of the laws afforded or attempted to be extended to the Lamb-Fish Lumber Co., and is also against the letter and the spirit of section 90 (h), of the Constitution of Mississippi, which prohibits the legislature from passing any local, private or special law exempting property from taxation.

In *Adams* v. *Railroad Co.,* 77 Miss. 271 *et seq.,* the court exhaustively discusses an exemption contained in a railroad charter which was conferred by special legislative grant and which applied solely and exclusively to the said railroad, and, while holding that the legislature had the power to select certain classes for taxation and to exempt

other classes, yet the exemption in that case was declared void because it did not apply alike to all of the same class. The court expressly holds and reaffirms many previous holdings, that in order to make any such exemption valid it must be extended to all of the same class and in the same situation. And the *Adams* case, *supra*, overrules *Mississippi Mills* v. *Cook*, 56 Miss. 40, in so far as the *Mississippi Mills* case is in conflict with *Adams v. Railroad*, and approves so much of it as is consistent with it and also overrules the *Lambert case*, 70 Miss. 779, which lays down a rule at variance with the rule announced in the Adams case. The Mississippi Mills charter was claimed to furnish an exemption to it in common with all others in like situation, and to that extent the court in the *Adams case*, *supra*, approves the Mississippi Mills case. In *Adams* v. *Tombigbee Mills*, 78 Miss. 676, at pages 684 and 685, the rule of uniformity required in such exemptions is again reaffirmed. In *Adams* v. *Kuykendall*, 85 Miss. 583, an exemption was claimed from liability to taxation on property of a certain kind by virtue of the charter provisions of the city of Vicksburg and an ordinance thereunder. The exemption was disallowed as being violative of the equality and uniformity rule of the Constitution and the case further holds that an unconstitutional exemption may be disregarded and taxes collected and that the rule of uniformity in taxation required by section 112 of the Constitution applies to municipalities. The rule of the Constitution requiring uniformity of taxation is again discussed and reaffirmed in *Adams* v. *Standard Oil Co.*, 53 So. 694. We might multiply authorities on this proposition *ad infinitum*, but it seems to us sufficient merely to direct the court's attention to the language of the ordinance and cite the general rule.

In proceeding to discuss the contentions made by the appellee in the court below, we shall undertake to show: 1st. That a municipality can only be estopped by some

affirmative act of its own as shown by its minutes or other written contract duly and properly made in a manner provided by law, and may not be estopped by the verbal promises and representations of some of its citizens and officials.     2nd.     That a municipality can never be estopped when acting in its public or governmental capacities and can only be estopped when acting in its private, as contradistinguished from its public or governmental capacities.     The universal rule is that a municipality can only be estopped by some affirmative act of its own, as by some legislative enactment, grant, or contract duly entered into in the manner provided by law and only then where the municipality is acting in its private as contradistinguished from its public or governmental capacities.     *Philadelphia, etc., Co., v. City of Omaha,* 93 Am. St. Rep. 442; *People* v. *City of Rock Island,* 106 Am. St. Rep. 179; *Flowers* v. *Logan County,* 137 Am. St. Rep. 354.     (Monographic note.)     In this case the matter under discussion involves the exercise of one of the highest prerogatives attaching to sovereignty—the right of taxation; and the representations, promises, and undertakings between citizens of the municipality and officers of the municipality acting in their private and not in their official capacity with the appellee and its predecessors, touching the matter of taxation, certainly lacked two of the essentials of an estoppel.     In the first place, no affirmative act of the municipality is shown prior to the erection of the appellee's manufacturing establishment.     Nothing that was done by the municipality, as such, was relied upon by the appellee as an inducement to it to erect its manufacturing establishment and to expend its money, or to do any other act involving burden or expense upon it.     In the second place, the question involves not the act of the municipality in its private capacity, but affects its right to exercise a strictly public and governmental power.     The municipality cannot be bound, either directly or indirectly, upon any promise, agreement or undertaking not shown

by an order duly and properly entered upon the minutes of the board. The mayor and board of Aldermen of a municipality like the county board of supervisors, as this court has many times decided, must speak through their minutes, and in that way alone. *Pass Christion* v. *Washington*, 81 Miss. 472; *Marion County* v. *Woulard*, 77 Miss. 343; *Dixon* v. *Green County*, 76 Miss. 394.

The learned chancellor in deciding the case adversely to the appellant, grounded his decision on the question of estoppel, and cited in support of his decision, the case of *Moore* v. *City of New York*, 73 N. Y. 238, decided April 9, 1878. We respectfully urge the court to read that decision for it is manifest that the chancellor was misled by it. In that case the city had made a contract for the doing of certain public work. The contract was perfectly valid on its face and the proceedings leading up to it were proper and regular in form and substance. It was contended by the city that the resolution had not been published in one of the large number of newspapers which were official journals of the city. This was a matter that did not appear on the face of the record and the work was properly done and the city received the benefit of it. The court very properly held that in a case of that character and a contract of that nature, on the facts of that particular case, the city was estopped from pleading this mere irregularity to defeat a just demand against it.

The motion to exclude the appellee's testimony should have been sustained because such evidence sought to show a state of facts that would bind the municipality on the oral promises and agreements of some of the citizens and some of the officials of the town not evidenced by any writing or contract on the minutes of the municipality or signed by any person authorized to make such an agreement for the municipality. Furthermore, the said testimony for the appellee showing the expenditure of divers sums of money by the appellee for various

purposes shows that such expenditures were volun-
tarily made by it, and primarily for its own benefit
and such expenditures were not made under any contract
with the town that such expenditures should be made.
See especially the testimony of W. B. Burke, witness
for appellee and manager of appellee's business. If
the municipality is to be estopped from exercising the
power to levy and collect taxes by the oral promises and
agreements of some of its officers and some of its citizens,
the door will be opened wide to the wholesale evasion of
taxes; and the question arises, how many citizens must
verbally promise immunity form taxes to give rise to
a contract with the municipality _via_ the estopped
route? There is only one safe rule by which to deter-
mine the rights and liabilities of municipalities and par-
ties dealing with municipalities in such cases and that
rule is the one that has been fixed by this court and con-
sistently adhered to in many cases, the municipality
must speak through its minutes and in that way alone.
_Pass Christian_ v. _Washington, supra; Marion County_ v.
_Woulard, supra; Dixon_ v. _Green County, supra._ It can-
not be seriously contended that the verbal promises of
citizens and some of the officials of the town was an
affirmative act of the municipality, or its act at all.
The municipality can act and speak, as we have shown,
only through its minutes; albeit the parties making
the promises or giving their assurance may have been
acting in good faith, believing the municipality would
not extend its limits or, if so, that the appellee
would be exempted from taxation. But this discussion
is beside the mark for if the municipality in matters gov-
ernmental cannot be estopped, the promises and re-
presentations of the citizens is of no moment; and the
rights of the appellee must be measured strictly by the
rules of law; it is a mere truism to say that the right
to levy and collect taxes is a public and governmental
prerogative and not a private right, and one who deals

with the municipality touching governmental affairs must deal at arm's length and is chargeable with full knowledge of the limitations on the powers of officials to bind the municipality. The power conferred by the statute authorizing muncipalities to bestow special immunities from taxation being a governmental function is required to be exercised in strict conformity with the law.

In the recent cause *celebre, Smith, State Auditor* v. *State* ex rel. *McNeil, District Attorney*, this court held that evidence showing "that the bonds were sold in good faith under the mistaken belief that the law was being complied with," was immaterial and the court applied the law as it was written and did not consider as worthy of consideration in the opinion in chief the contention that the state was estopped by the acts of its chief executive officers, and only noticed it in the opinion overruling the suggestion of error. Adv. Sheets, Southern Reporter, September 2, 1911.

*Tim E. Cooper*, for appellee.

The principal proposition which I desire to submit and consider, is, that the municipality is estopped from denying either the regularity of the passage of the ordinance exempting the Lamb-Fish property from taxation, or its validity. In the discussion of this question, it is necessary to keep in mind the complex character of a municipal corporation. A municipal corporation, under our Act of Incorporation, performs certain functions or duties for the general public; certain others for what may be called the municipal public and they also perform functions relative to property rights held by the municipalty itself and owned as an indivdual owns property. It is necessary to keep in mind these various functions and complex character of a municipality, to prevent confusion of thought. A municipal

corporation of course finds its power in the act, or charter, by which it is created, and unless the authority is delegated by the charter, it does not exist. The best illustrations of cases in which the municipal authorities stand as the representatives of the general public, is in reference to its streets. Control of streets, their establishment and discontinuance, is committed to the municipal authorities, but so long as the streets are established they belong, not to the municipal corporation, but to the general public. Any citizen of the town of Jackson has as much right in the streets of Charleston as an inhabitant of that town, but the local municipal authorities of Charleston have control over the streets, as the representatives, not only of the municipal public, but of the general public. Now, as to this class of rights, it seems to be well settled by many authorities that no estoppel can arise against the general public by reason of the action or non-action of municipal authorities. See Dillon on Municipal Corporations, sections 667 and 675. All powers executed by the municipal authorities in reference to municipal property owned by the municipality as an individual might own it, are subject, to a large extent, to the same rules and principles which control in reference to action by individuals in reference to their property. A town may be the owner of its waterworks, of its lights, of its municipal buildings, of its parks and various other sorts of property devoted to public use. It may also be the owner of a street railroad operated for profit. Now, as to the operation of its road, it is controlled by precisely the same rules as would control if the road was owned by an individual. When it comes to the management of its municipal property devoted to municipal public purposes, a different rule prevails.

I have called the attention of the court to this distinction reconized in all the books, that the court may not be misled by general statements that a municipality

is not bound by estoppel. It may be true that it is
not bound by estoppel, when by invoking that principle
it is sought to estop the general public, although it seems
that the general public itself may be estopped under
conditions. 1 Cooley on Municipal Corporations, sec-
tion 675. Now a municipality, just as a private person,
cannot be estopped in reference to a matter as to which
it has no authority to act or to contract. A married
woman, under our old laws, or a minor, having no author-
ity to make a contract, cannot be bound by estoppel
and municipal authorities having no power over a sub-
ject cannot be bound by mere nonaction, or what is called
estoppel. In other words, a municipal corporation may
always defend by invoking the rule of *ultra vires*. There
is a great difference however, when the question involved,
is whether the municipal authorities had any power
under any circumstances over the subject matter, and
where, the general power existing, the question is, whether
municipal authoirties are estopped because the existing
power was irregularly or improperly exercised. If the
municipal authorities of Charleston had no power under
its charter and under the general law, to exempt the prop-
erty of the Lamb-Fish Lumber Company from munici-
pal taxes, then no action taken by that body could
result in exemption and no representation or conduct
or contract would be sufficient to create the exemption.
In other words, you could not, by estoppel, confer a
power which the municipal authorities, in no event,
could have. But where, as here, the municipal au-
thorities had power over the general subject and this
power, if exercised in a particular way would have given
the right of exemption, or proposition is, that since the
municipal authorities might have created by contract
or stipulation, the exemption, it may be estopped to
deny that the exemption exists by reason of its acts
and conduct. Mr. Dillon says: "The general principle
of law is settled beyond controversy that the agents,

officers, or even city council of a municipal corporation, cannot bind the corporation by any contract which is beyond the scope of its powers, or entirely foreign to the purposes of the corporation, or which (not being legislatively authorized) is against public policy. This doctrine grows out of the nature of such institution, and rests upon reasonable and solid grounds. The inhabitants are the corporators; the officers are but the public agents of the corporation. The duties and powers of the officers as public agents of the corporation are prescribed by statute or charter, which all persons not only may know, but are bound to know. The opposite doctrine would be fraught with such danger and accompanied with such abuse that it would soon end in the ruin of municipalities, or be legisatively overthrown. These conditions vindicate both the reasonableness and necessity of the rule that the corporation is bound only when its agents or officers, by whom it can alone act, if it acts at all, keep within tha limits of the chartered authority of the corporation. The history of the workings of municipal bodies has demonstrated the salutary nature of this principle, and that it is the part of true wisdom to keep the corporate wings clipped down to the lawful standard. It results from this doctrine that contracts not authorized by the charter, or by the legislative act, that is, within the scope of the powers of the corporation under any circumstances, are void and in actions thereon the corporation may successfully interpose the plea of *ultra vires*, setting up as a defense its own want of power under its charter or constituent statute to enter into the contract. In favor of bona fide holders of negotiable securities, the corporation may be estopped to avail itself of irregularities in the exercise of power conferred; but it may always show that under no circumstances had the corporation power to make a contract of the character in question. This subject has already been referred to, and will be considered in a subsequent portion of the present

chapter. The mere fact, however, that a city, in making a contract for a public improvement within its corporate powers, promises to make payments in negotiable bonds, which it has no power to issue, does not make the entire contract *ultra vires;* and therefore if work be done under such contract the city will be liable therefore.

*Contracts ultra vires or invalid.* Agreebly to the foregoing principles, a corporation cannot maintain an action on·a bond or a contract which is invalid, as where a city, without authority, loaned its bonds to a private company, and took from it a penal bond, conditioned for the faithful application of the city bonds to payment for works which the city had no power to construct or assist in constructing. The remedy in such case must be in some other form than in an action to enforce the contract.· So, a contract by a city to waive its right to go on with the laying out of a street or not, as it might choose is it seems, against public policy and it is void if it amounts to a surrender of its legislative discretion. So, a promise to pay a public corporation, or its agents, a premium for doing their duty is illegal and void; and a contract will not be sustained which tends to restrain or control the unbiased judgment of public officers. But a promise by individuals to pay a portion of the expense of public improvements, does not necessarily fall within this principle, and such promise is not void as being against public policy; and if the promisors have a peculiar and local interest in the improvement, their promise is not void for want of consideration, and may be enforced against them. So, on the other hand, a party making with a city a contract which is *ultra vires* is not estopped to set up its want of authority to make it." "Any positive .acts *infra vires* by municipal officers which may. have induced the action of the adverse party and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done, will work an estoppel." . 1 Dillon on Municipal Corpora-

tions, 417, note 2, citing *Martell* v. *East St. Louis*, 94
Ill. 67; *Roby* v. *Chicago*, 64 Ill. 447; *Chicago Railroad* v.
*Joliet*, 79 Ill. 39; *Logan Co.* v. *Lincoln*, 81 Ill. 156.

*Dinkins & Caldwell* filed an elaborate brief, too long
for publication, for appellee.

COOK, J., delivered the opinion of the court.

Appellee was the owner of a manufactory, already
established and in operation, located outside the cor-
porate limits of the town of Charleston. The town, by
proper ordinance, extended its limits to embrace this
manufacturing plant, which ordinance of forcible annexa-
tion did not meet the approval of appellee, and it made
known its objections to the board of aldermen. In
order to placate, the city fathers agreed to, and did,
adopt an ordinance exempting the property of appellee
from municipal taxation for a period of eight years.

The objections of appellee to the confirmation of the
ordinance being of a purely financial nature, it called
off the dogs of war, and declined to carry out its threat
to appeal, in consideration of the exemption of its prop-
erty from contribution of money to the burdens of gov-
ernment. The revenue agent then took up the cudgels,
and, to no avail, attempted to secure from the chancery
court its aid in placing the property of the company
upon the town assessment rolls like the property of
ordinary citizens and taxpayers. The refusal of the
chancellor to do so is the cause of this appeal.

The position of appellee is that the annexation ordi-
nance is void because (a) it was not made valid and opera-
tive according to the plans and specifications prescribed
by section 3305, Code of 1906; and (b) the ordinance
exempting its property from taxation is valid and binding
upon the town.

We believe it to be settled law that the validity of an
ordinance extending the limits of the town cannot be

collaterally assailed on the grounds laid in the briefs
of counsel, and we therefore hold that the ordinance
is valid and binding on appellee in this litigation. It
had the remedy of appeal and waived that right.

The real and only point to be decided in the present
case goes to the foundation of the defense, and involves
the power of the town authorities to exempt from muni-
cipal taxation an existing, going manufactory. If the
power exists, it is to be found in section 3347 (Thirty-
first), Code 1906, viz.: "To aid and encourage the
establishment of manufactories, gasworks, waterworks,
and other enterprises of public utility other than rail-
roads, within the corporate limits, by exempting all
property used for such purposes from municipal taxa-
tion for a period not longer than ten years." This sec-
tion is written in the language of section 192 of the
Constitution, and a correct interpretation of "aid and
encourage the establishment of manufactories" will
furnish a solution of the controversy in the present case.
It will be observed the section does not confer upon the
municipality the broad power to aid and encourage
manufactories, but the power to aid and encourage is
limited to the establishment of manufactories. The
power to exempt from taxation a selected class of property
must be strictly construed, and cannot be broadened
to cover property not included in the definition. The
theory is that all property is subject to taxation, and
the makers of our Constitution carefully limited the
authority of the legislature to confer upon cities and
towns the power to exempt the class of property specif-
ically mentioned in section 192.

The record discloses that the manufactory named
in the ordinance was established at the time the ordinance
was passed, and had been in operation for some time
prior thereto. It needed no aid or encouragement,
and, indeed, was asking none. The company objected
to the ordinance for the simple reason that the benefits

accured to them from being a part of the town of Charleston would not compensate them for the taxes they would have to pay for this privilege. At any rate, the threat to appeal from the action of the board of aldermen was never executed, for the manifest reason that, the question of taxation being satisfactorily adjusted, it had no further interest in the proceedings.

We have not criticised the exemption ordinance on account of its form, or because it purports to be a special privilege granted to appellee alone and because its provisions do not and were not intended to be applied to all property of the same class. The ground upon which our opinion rests excludes any claim of estoppel. The town having exceeded its powers, the ordinance is void.

The able brief invoking the equitable doctrine of estoppel concedes that the doctrine does not apply if the town had no authority to do the thing which it undertook to do.

*Reversed and remanded.*

ON SUGGESTION OF ERROR.

REED, J.    We have read with interest, and carefully considered, the suggestion of error filed by counsel for appellee, and we commend them for the fairness and frankness, as well as the forcibleness of their argument.

Counsel present the single proposition that the court erred in deciding that the ordinance extending the limits of the town of Charleston could not be collaterally attacked in this case, and that the ordinance is valid and binding on appellee. Counsel contend that the ordinance is not valid and will not bind appellee, because it is not shown that the municipal authorities inquired into the fact of the publication and notice thereof, and adjudged that the same was made according to law, as provided in section 3305 of the Code of 1906. Section

3301 of the Code of 1906 provides for the enlargement of the boundaries of a municipality by an enactment of an ordinance by the municipal authorities defining the territory to be added. Section 3302, which is headed "When ordinance to become operative," requires that the ordinance shall be published for three weeks in a newspaper, or be posted in three public places, and provides that after the publication or posting of the ordinance, after one month has elapsed, the ordinance shall become operative, unless an appeal be prosecuted. Section 3303 provides that any person interested may appeal at any time before the ordinance becomes operative, and section 3304 states that the appeal shall be to the circuit court, and the issue to be tried to be whether the proposed extension be or be not unreasonable. If adjudged unreasonable, it shall be vacated, and, if adjudged reasonable, it shall go into effect within ten days after the final judgment. Section 3305 makes the further provision that, if an appeal be not prosecuted from the ordinance within the time provided, the municipal authorities shall inquire into the fact of publication and the notice, and adjudge whether the same has been made according to law. Such finding, if made in good faith, shall be conclusive, and thereupon, after the expiration of one month from the passage of the ordinance, it shall become operative. It contains the further provision that, in the event of the affirmation of the ordinance by the circuit or supreme court, it shall become valid and operative. It will be seen that in the plan for the adding of new territory to a municipality a notice is required to be given of the passage of the ordinance, and that the operation of the ordinance is deferred until one month after its passage. It is plain from the statute that the purpose of this notice and the delay in time when the ordinance shall go into operation is to permit any person who may be interested to oppose the enlargement of the muni-

cipality by taking an appeal from the action of the authorities in passing the ordinance to the circuit court for the trial of the question as to whether the extension is or not unreasonable.

Section 3302 makes a clear statement of when and under what conditions the ordinance shall become operative. Then section 3305 repeats the statement as to the time after the passage when the ordinance shall become operative, and imposes upon the municipal authorities the duty to look into the publication and notice, if appeal had not been prosecuted within the prescribed time, and decide whether they have been made according to the statute. When they shall have done this, if done in good faith, the question of the notice and publication shall be conclusive. Now, the record in this case shows that the ordinance was duly passed, and that the publication thereof was made as provided by the statute. Through the publication a proper notice was given to the public, and the record shows that one of the public, the appellee, an interested party in the subject-matter, after the publication of this notice and before the expiration of the time in which an appeal could be taken, appeared before the municipal authorities to except to the ordinance; that following the appearance and the exception, and after negotiation with the authorities, it was agreed that an ordinance exempting the appellee from taxation should be passed. Appellee participated in the discussion of this matter with the mayor and board of aldermen of Charleston, and accepted the benefits of the exemption ordinance. That ordinance was passed three days before the expiration of the month after the passage of the original ordinance, and refers to the extension of the limits of the municipality as made by the ordinance. It also appears in the record that at the end of the thirty days after the passage of the ordinance the exemption ordinance was brought up at a meeting of the board of aldermen of Charleston for the purpose of reconsideration.

It will be seen that, not only was publication and notice of the passage of the ordinance made in pursuance of the statute, but that it had the effect of giving notice to the appellee, and that appellee, in accordance with its rights, prepared to oppose the operation of the ordinance, purposing to appeal as provided in the statute, and would have appealed had not the authorities granted the exemption of its property from taxation.. The benefit of this exemption received by appellee extended for over two years. Appellee by all of its conduct in this case recognized and accepted the sufficiency in the complete enactment of the ordinance whereby the additional territory was taken into the limits of the town of Charleston, and by its acceptance of the benefits of the ordinance, and its continued acquiescence in what was done by the authorities, and the status of the town through the extension of its limits, in effect, approved the ordinance as sufficiently making the addition to the municipality, which included its property. It will be noted that one of the main contentions of appellee in the original presentation of this case was that the ordinance exempting its property from taxation was valid and binding upon the town. In truth, one of the counsel for appellee in the first presentation of its case in this court rested all of his argument upon the proposition that the town of Charleston was estopped from questioning the validity of the exemption ordinance. It will be seen that the exemption ordinance could only be valid if the ordinance extending the town limits is valid.

We conclude that appellee, in view of all of its conduct in the present matter, including its approval and acceptance of the exemption ordinance, its failure to appeal in accordance with the rights given under the statute, and its acquiescence in the status of the town's territory after the passage of the ordinance extending its limits, is now estopped to question the validity of the ordinance

making the annexation. It is stated in 28 Cyc. 214, that: "Taxpayers, or inhabitants, may be estopped to question the validity of annexation or detachment of territory to or from a municipal corporation, as by acquiescence in the annexation, or delay in attacking the same, or by failing to exercise the right of contravention and appeal given them by statute." In the case of *Kuhn v. Port Townsend*, 12 Wash. 605, 41 Pac. 923, 29 L. R. A. 445, 50 Am. St. Rep. 911, it is therein decided: "A private citizen cannot question the right of a municipal corporation to exercise the authority, powers, and functions of an incorporated city; nor can he, in a private action, question, the due annexation to it of territory over which it has assumed to exercise jurisdiction for several years, under proceedings taken to effect such annexation.. . . . . . One who participated in proceedings for the annexation of territory to a municipality, and subsequently recognized the jurisdiction of the municipal authorities and acquiesced for several years in their claim that such annexation had been effected, is estopped from thereafter questioning it." In delivering the opinion in this case, Gordon, J., said: "The appellant's participation in the annexation proceedings, his subsequent recognition of the jurisdiction of the city authorities, his acquiescence in the result reached and declared by them, and his gross laches in the assertion of his rights, constitute an equitable bar to the cause of action which he, after the lapse of nearly three years, first attempted to assert; and it would be immaterial to the result were we to determine that his conduct amounted to a ratification or an election, or requires the application of the doctrine of estoppel. *Strosser v. Ft. Wayen.* 100 Ind. 443; *Hayward v. National Bank*, 96 U. S. 611, 24 L. Ed. 855; *Graham v. Greenville*, 67 Tex. 62, 2 S. W. 742. In *Strosser v. Ft. Wayne*, 100 Ind. 443, it is said: 'If a taxpayer were permitted to long acquiesce in the order of annexation and then secure

its overthrow, great confusion would ensue, and much injustice be often done. High considerations of public policy and of justice require that a taxpayer, who is notified that a public corporation claims to have extended its limits so as to take in his property, should act with promptness and proceed with diligence, if he would resist the attempted annexation." One of the reasons upon which the doctrine of waiver or estoppel is grounded is the statute gives individuals and corporations interested a day in court, and they may be heard both before the town board and by the courts, and all this was waived by appellee. The only interest individuals can have in the extension is the reasonableness of taking their property in, but the state can challenge by quo warranto the unwarranted and illegal exercise of franchises and powers by a municipal corporation, and this seems to be the only proper way to raise the question which appellee attempts to raise in a collateral attack.

It is the general rule that the validity of proceedings to annex territory to a municipality should be attacked by quo warranto, and that unless the annxation proceedimgs are absolutely void, as for want of jurisdiction, they are not subject to collateral attack. 28 Cyc. 212, 213. It is stated in McQuillin on Municipal Corporations, p. 305, that: "It is a general legal proposition that *quo warranto* is the proper remedy to test the right of a municipal corporation to exercise its functions over territory alleged to be outside its corporate limits." There is nothing in the present case to prevent the consummation of the proceeding for annexation, and, seeing that the Legislature has conferred upon the town the power to enlarge its corporate limits by the passage of proper ordinance, and that such ordinance has been passed, and that notice required by the statute has been properly given, and that the town has proceeded to act upon the basis that the annexation has been made, and

to exercise its authority and powers over the portion so annexed, we do not believe that the legality of the annexation can be called into question in a collateral proceeding.

The appellee should not now be heard to assail the ordinance of annexation.

*Suggestion of error overruled.*