ROBERTSON, STATE REVENUE AGENT, *v.* SOUTHERN PAPER CO.

[80 South. 384, Division B.]

1. MUNICIPAL CORPORATIONS. *Authority of legislature. Encouragement of industry.*

   The legislature can confer upon towns and cities, by general laws, the power to encourage the establishment of manufactories within the corporate limits.

2. MUNICIPAL CORPORATIONS. *Exemptions. Ordinance. Validity.*

   Since section 182 of the Constitution expressly provides that the power to tax corporations shall never be surrendered or abridged by any contract or grant to which the state or any political subdivision thereof may be a party, where a factory had already been located or established when the board of aldermen entered into a contract to pass an ordinance extending the corporate limits, which was agreed to by a corporation, in consideration

119 Miss.—8

of the promise of the city officers that they would pass an exemption ordinance in favor of such corporation which was accordingly done. In such case the ordinance was *ultra vires* and void.

3. SAME.

It is one thing to secure the location or establishment of manufactories and quite another thing to exempt a factory already established, and a city has no power either under section 192 of the Constitution or Laws of 1912, chapter 115, to exempt from taxation a factory already established in the corporate limits.

APPEAL from the circuit court of Jackson county.

HON. J. H. NEVILLE, Judge.

Suit by Stokes V. Robertson, State Revenue Agent, against the Southern Paper Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Wells, May & Sanders,* for appellant.

The appellee's plant had not been completed, it is true, at the time of the passage of the exemption ordinance, but it was, as the Revenue Agent contends, 'established'' and that the municipal authorities were without power to confer exemption upon the Southern Paper Company. The discussion of that question depends on whether the Southern Paper Company had established its business at the time of the passage of the ordinance. If it had so established its business the exemption claimed is void, the ordinance as to the Southern Paper Company is a nullity, the special plea interposed is insufficient and the demurrer should have been sustained.

We submit that the insufficiency and the invalidity of the exemption claimed is settled by the decision of this court in *Wirt Adams* v. *Lamb Fish Lbr. Co.,* 103 Miss. 491. The contention will doubtless be made here as it was below that, because the Southern Paper

Company was not in operation at the time of the passage of the ordinance, the Lamb Fish case is not decisive. We submit that this is a mere "sticking in the bark." The plant was established and needed no encouragement from the municipality, and was asking none, and the very language of the ordinance itself, as well as the plea, makes it quite clear that its business was established and located on a plot of ground described in the plea and that it would be in operation within a short time, regardless of the action of the municipality. At this point, we are confronted with this question: When is a manufactory established within the purview of the Code, section 3347, and section 192 of the Constitution? Upon the answer to that question depends the liability or non-liability of the Southern Paper Company for the taxes claimed, so far as its manufacturing establishment is concerned. The plant was located and nearly completed when taken into the town and when the exemption ordinance was passed. We contend that the term "established" does not mean built and completely equipped for immediate occupation, but means that the enterprise should be so far promoted as to be reasonably sure of operation. Appeal of Seagraves, 17 Atl. 412; Words & Phrases, page 2469; *Gray et al. v. Salt Lake City*, Ann. Cas. 1916D 1135.

An established road includes a street laid out by the commissioner and approved by the court, though not opened. *City of Chester* v. *D. & P. R. R. Co.*, 21 Atl. 320; Words & Phrases, p. 2474.

A county is "established" when provided for, though not organized or going as a government. *State* v. *McFadden*, 23 Minn. 40; *State* v. *Parker*, 25 Minn. 215; Words & Phrases, p. 2474; *Bank* v. *Comrs.*, 79 N. W. 591, 77 Minn. 43.

We have found no case defining the meaning of the word "established" as used in a statute exactly like the one before us, but in the cases we have cited, which

we believe are analogous in principle, the word "established" as used in our state should not be so construed as to mean "established and in operation." We believe the common sense of the statute as well as the decisions and the ordinary understanding of the word "established," when applied to a manufactory enterprise, clearly show that the Southern Paper Company was established when this exemption ordinance was passed. If there is any doubt as to the meaning of this word, however (though we believe there is none), then that doubt must be resolved against the exemption claim. The rule in such cases is laid down by our court in *Y. & M. V. R. R. Co.* v. *Thomas,* 65 Miss. 652.

In the case of *Yocona Cotton Mills* v. *Duke,* 71 Miss. it was held that the ordinance of the constitutional convention of 1890 exempting certain factories from taxation for a period of ten years did not apply to existing factories.

The universal rule is that a municipality can only be estopped by some affirmative act of its own, as by some legislative enactment, grant or contract, duly entered into in the manner provided by law, and only then when the municipality is acting in its private as contradistinguished from its public or governmental capacities.

Section 3347 of the Code of 1906, under which this exemption is claimed, begins with the significant words: "To aid and encourage the establishment of manufactories." etc. We submit that the language of the statute clearly implies that it was the thought and purpose of the legislature, acting under the authority conferred by section 192 of the constitution to place in the hands of municipal authorities a means where-by they could draw manufactories and induce them to locate and develop manufacturing enterprises in municipalities, the substantial inducements being exemption from municipal taxation. If this was the purpose of such legislation, and that construction and

no other is justified by the language of the statute, then it was never intended to authorize municipal authorities to legislate a gift or bonus of taxes to an enterprise already in existence. Now if the language clearly means that, of course no exemption could be held under this ordinance and if the language is ambiguous and may mean that or may not mean that, then under the case of *Railroad* v. *Thomas, supra,* the exemption being "in derogation of the sovereign authority and of a common right" must be denied. *Philadelphia, etc., Co.* v. *City of Omaha,* 93 Am. St. Rep. 442; *People* v. *City of Rock Island,* 106 Am. St. Rep. 179; *Flowers* v. *Logan County,* 137 Am. St. Rep. 354 (monographic note).

The municipality cannot be bound, either directly or indirectly, upon any promise, agreement, or undertaking not shown by an order duly and properly entered upon the minutes of the Board. The mayor and board of aldermen of a municipality, like the county board of supervisors, as our court has many times decided, must speak through their minutes, and in that way alone. *Pass Christian* v. *Washington,* 81 Miss. 472; *Marion Co.* v. *Woulard,* 77 Miss. 343; *Dixon* v. *Greene Co.,* 76 Miss. 394.

If the municipality is to be estopped from exercising the power to levy and collect taxes by oral promises and agreements of some of its officers and some of its citizens, the door will be open wide to the wholesale evasions of taxes; and the question arises, how many citizens must verbally promise immunity from taxes to give rise to a contract with the municipality *via* the estoppel route? There is only one safe·rule by which to determine the rights and liabilities of municipalities and parties dealing with municipalities in such cases, and that rule is the one which has been fixed by the supreme court, and consistently adhered to—the municipality must speak through its minutes and in that way alone. *Pass Christian* v. *Washington, supra; Marion*

*Co.* v. *Woulard, supra; Dixon* v. *Greene Co., supra.*

It cannot be seriously contended that the verbal promise of citizens and some of the officials of the town was an' affirmative act of the municipality, or its act at all. The municipality can act and speak, as we have shown, only through its minutes, albeit the parties making the promises or giving their assurances may have been acting in good faith, believing the municipality would not extend its limits, or, if so, that the defendant would really be exempted from taxation. But this discussion is really beside the mark, for if the municipality, in matters governmental, cannot be estopped, the promises and representations of the citizens are of no moment, and the rights of the defendant must be measured strictly by the rule of the law, and it is a mere truism to say that the right to levy and collect taxes is a public and governmental prerogative, and not a private right, and one who deals with the municipality touching governmental affairs must deal at arm's length and is chargeable with full knowledge of the limitations of the powers of officials to bind the municipality. The power conferred by the statute authorizing municipalities to bestow special immunities from taxation being a' governmental function is required to be exercised in strict conformity with the law. 56 So. 179, 99 Miss. 859.

At the time of the passage of the exemption ordinance, the city of Moss Point did not have the power to exempt from taxation the Southern Paper Company nor any other property in the same situation, because the manufacturing plant of the Southern Paper Company was already established, and the statute conferring upon municipalities the power to grant exemptions was designed and intended to aid and encourage the establishment of manufacturing enterprises, but it was never intended to confer upon municipalities the authority to relieve from taxation by *ex post facto*

ordinances, the property of manufacturing concerns already established.

*White & Ford,* for appellees.

The revenue agent's contention in brief is that the mayor and board of aldermen of Moss Point were without authority to grant exemption to the Southern Paper Company because it had already established its plant before the exemption ordinance was passed. A simple statement of the facts in this case about which there is no dispute ought to be sufficient to effectively dispose of the revenue agent's contention. This case, we think, comes as squarely under the exemption law as one could imagine. As we understand counsel's argument, a plant which is in the course of establishment or is being established or when any overt act toward the establishment has been done by the exemptionist, the authorities are without power to grant the exemption authorized by section 192 of the Constitution and the Code sections enacted in pursuance thereof. We desire to call attention, at the outset, that exemption is claimed under chapter 115, Laws of 1912, appearing at page 103 of the published acts of that year. This chapter is not amendatory of the Code sections relating to similar matters, but to all intents and purposes is the same, except that it provides for the exemptions of additional industries. This act was approved March 15, 1912, and provides for exemptions of certain industries including paper manufacturing plants, such as that owned by appellee. It provides: "That all permanent factories, or plants of the kind hereinafter named, which are now in the course of establishment, or which shall hereinafter be established in this state before the first day of January 1918, shall be exempted from all state, county and levee taxation for a period of five years . . . municipalities may grant like exemption for a period of ten years."

The admitted facts in this case show that the first overt act done by the Southern Paper Company towards the location or establishment of its plant in Jackson county was the letting of a contract in April, 1912, for plant construction, appellee having decided in March, 1912, to engage in paper manufacture in Jackson county.. Construction was begun in May and continued thereafter for a period of fifteen months, namely, until July, 1913. At the time chapter 115, Laws of 1912, was enacted, nothing visible or apparent towards plant construction had been done. If therefore the plant was in the course of construction at the time of the passage of this act, or afterwards, it would be entitled to exemption. Learned counsel for appellant seem to have overlooked entirely the fact that the statute authorized the exemption of plants in the course of establishment, as well as those established after the passage of the act.

Appellant relies confidently on the case of *Wirt Adams* v. *Lamb Fish Lbr. Co.*, 103 Miss. 491. We submit with equal confidence that this case has not the slightest application to this nor that it is even instructive on the points here involved. The essential and vital difference between the facts of that case and this one is that here the Southern Paper Company had merely begun construction, whereas in the Lamb Fish case, the plant was completed and in operation. There is however, authority in Mississippi as nearly in point as we could wish on the real question here involved; we refer to the case of *Wirt Adams* v. *The Winona Cotton Mills*, 92 Miss. 743. The only difference between that case and this is that there exemption was claimed from state taxation whereas here municipal taxation is involved. Chapter 48, Laws of 1900, provided for the exemption from taxation of a certain class of factories then in course of establishment or to be thereafter established. This act was approved March 6, 1900. The Winona Cotton Mills was charter-

ed on February 21, 1900, began constructing its factory on March 1st, that year, and completed construction, in August, 1901. In May, 1901, exemption from state taxation was applied for and granted. It was contended by the revenue agent that the act could not be made retroactive so as to apply to a plant in course of establishment or construction. As stated by WHITFIELD, Chief Justice: ''Section 1 expressly provides that all factories of the kind hereinafter named, which are now in the course of establishment, or which shall hereinafter be established . . .''

Comparing that case with the one presented by this record, we find that the facts are so similar in principle as to make that case absolutely decisive of the issues here involved. In that case the factory was in course of construction or establishment at the time the state law was passed; at the time the municipal ordinance was passed in August, 1912, the plant of the Southern Paper Company was in course of establishment or construction. It will be remembered that the same act which granted the state exemption, namely chapter 115, of the Laws of 1912, also authorized municipalities to grant like exemption. Learned counsel for appellant seem to think that section 3347 of the Code of 1906, is the only authority for the grant of exemption to appellee in this case. That section is found under an enumeration of powers of municipalities in general authorizing them: ''To aid and encourage the establishment of manufactories . . . by exempting all property used for such purposes from municipal taxation for a period not longer than ten years.''

At this time section 3347 of the Code of 1906 was enacted, neither municipalities nor the state could grant exemption from taxation to paper factories such as appellee. Chapter 115 of the Laws of 1912 approved in March of that year did include paper or pulp factories, such as appellee, along with other wood working establishments. Even during that period when

section 3347 was the law, municipalities could, under section 4251, sub-division V, grant exemption from municipal taxation to factories of the kind named therein in course of establishment at the time the act was passed.

Throughout appellant's brief the assertion is made that the plant of appellee was established, and needed no encouragement. We do not know where counsel find the facts in the record on which to base this statement. The only allegation as to the progress of construction or as to what time the plant could be in operation, is found in the statement as to when the plant was started and when it was finished.

Reference is made to the case of *Yocona Cotton Mills Co.* v. *Duke,* 71 Mississippi. That case, however, is not applicable because it was decided on a constitutional ordinance of 1890 which only exempted factories coming into existence after the act was passed and not those in course of establishment. It has no application here.

It is also contended by appellee that no reliance can be placed on the agreement between the city of Moss Point and appellee, as to exemption, because that agreement was in parol. It is said that the agreement, if any, must be shown, by the minutes, otherwise it would not stand in law. We are willing to stand by the minutes and there found our case. Referring to Ordinance No. 136, which granted the exemption (this ordinance being, of course, shown by the minutes), and appearing in this record at pages 28-29, we find the agreement expressly recited in the following words: "Whereas it was agreed between the mayor and the board of aldermen that the city of Moss Point and the officers of the Southern Paper Company at the time that said annexation ordinance was being considered that the plant and property of the Southern Paper Company would be granted exemption from municipal taxation for a period of ten years, beginning with the

first day of February, 1913, and ending with the fiscal year 1923, on condition that the Southern Paper Company would consent to such annexation ordinance." We could not desire a plainer statement of an agreement in writing than this.

It is manifest that a solemn contract was entered into between the city and appellee, whereby the plant in course of construction should be brought within the municipal limits. It is clear further from the recitals of the order passed by the mayor and board of aldermen that this contract was entered into in the utmost good faith and that the citizens of Moss Point have derived great benefit and profit from the plant of appellee. Further that it would constitute a breach of confidence and good faith to annul the exemption at this time. The revenue agent by this proceeding is trying to force on the city of Moss Point the collection of taxes which it does not want. If he should succeed, it would be, so to speak, "tainted money" that was forced into the city's coffers.

In conclusion, we submit that the revenue agent does not have even a helpful technicality on which to stand and that this court, like the court below, should leave the city of Moss Point and the Southern Paper Company where the revenue agent found them.

COOK, P. J., delivered the opinion of the court.

The revenue agent commenced this proceeding before the board of mayor and aldermen of the city of Moss Point. The revenue agent gave notice to the tax collector of the municipality to assess certain property belonging to the Southern Paper Company, appellee in this appeal, which it was alleged had escaped taxation. The notice and proceedings were all in accordance with the statute applicable to such proceedings. After notice the tax assessor returned his assessment. The revenue agent propounded certain inter-

rogatories to the paper company, a nonresident corporation, which interrogatories were not answered. The revenue agent then made a motion for judgment against the paper company, which motion was overruled. Upon motion of appellee, the interrogatories were stricken out, and the proceedings were dismissed, and the revenue agent appealed to the circuit court of Jackson county, which court sustained the contention of the paper company, and the revenue agent prosecuted an appeal to this court.

Without going into the details of the trial in the circuit court, suffice it to say that the paper company filed a special plea, to which the revenue agent interposed a demurrer, which was overruled, and, the revenue agent declining to plead further, the assessment proceedings were dismissed, and this appeal followed.

The special plea in bar filed by appellee contains the defense of appellee, which defense was sustained by the court. The plea in substance is about as follows:

That appellee, a corporation, was chartered under the laws of the state of New York, in October, 1911, and was authorized by its charter to engage in the manufacture of paper, or pulp, from wood at any place in the United States that its directors might select. That during the month of March, 1912, appellee concluded to engage in paper manufacturing in Jackson county, Miss., and to construct a mill for that purpose near Moss Point in said county. That in April, 1912, a contract was made with the Lackawana Bridge Company for plant construction and machinery installation at a location near Moss Point. That excavation for buildings and machinery was begun in May, 1912, on the Southeast quarter of section 20, township 7 south, range 5 west, which land the International Process Company had theretofore agreed to convey to appellee. That work on the plant continued from May, 1912, to July, 1913, when it was finished and

operations began. That during the month of May, 1912, appellee entered into negotiations with the mayor and board of aldermen of Moss Point looking to the extension of the municipal limits so as to include appellee's plant then in course of construction. That an oral agreement was made between appellee and the municipal authorities whereby the municipality agreed to extend its limits and take in appellee's plant, and that, in consideration of the grant to appellee of exemption from municipal taxation for a period of ten years, appellee would not object to the extension of the city limits, but would complete the establishment and construction of its plant. That in pursuance of said agreement the municipality by ordinance passed on the 5th day of June, 1912, extended the city limits so as to take in the appellee's plant; a copy of the ordinance being exhibited to the plea. The plea further set up that on the 8th day of August, 1912, the mayor and board of aldermen in pursuance of the agreement theretofore made with appellee enacted Ordinance No. 136, a copy of which was exhibited to the plea, and appearing in the record, by which the plant and all property of appellee used in the manufacture of paper was exempted from taxation for a period of 10 years. The preamble of the ordinance recited the following:

"Whereas, the Southern Paper Company has in course of construction an establishment in the city of Moss Point, Mississippi, as its limits were extended by ordinance duly passed on the 24th day of June, 1912, a plant for the manufacture of pulp and paper from wood and wood fiber.

"And, whereas, it was agreed between the mayor and board of aldermen of the city of Moss Point and the officers of the Southern Paper Company at the time that said annexation ordinance was being considered, that the plant and property of the Southern Paper Company would be granted an exemption from municipal taxation for a period of ten years beginning

with the first day of February, A. D. 1913, and ending with the fiscal year 1922. On condition that the Southern Paper Company consent to such annexation ordinance.''

The exemption from taxation claimed in this case we are advised is based upon chapter 115, Laws 1912. The law exempts this company, if the law itself is a valid exercise of legislative power, whereby the legislature undertakes to confer upon municipalities the power to exempt corporations from taxation, which had been established before the ordinance granting the exemption was adopted.

The legislature can, of course, confer upon towns and cities, by general laws, the power to encourage the establishment of manufactories within the corporate limits. This power is not only conferred upon the legislature, but the legislature is admonished to do this very thing. The question then is: Does the exemption claimed here square with section 192 of the Constitution? In other words, do the facts show that the manufactory in question had not been established before the enactment of the ordinance which grants the exemption?

As we understand the facts, the corporation had definitely decided to locate or establish its plant near the city of Moss Point, and to this end it had purchased a site, and contracted with a builder to construct the plant, and the construction was entered upon. It was at this juncture that the officers of the city and the corporation entered into negotiations whereby the corporate limits were to be extended so as to take in the manufacturing plant, upon the understanding that an ordinance would be passed exempting the manufactory from the payment of municipal taxation. There is no doubt that the contract was made in good faith, or that the ordinance was passed in obedience to a sense of honor.

Why greater powers were conferred upon the legislature to exempt such corporations from the payment of state and county taxation may be difficult to answer, but that this was done is nevertheless true.

This court, in *Adams, Revenue Agent,* v. *Cotton Mills,* 92 Miss. 743, 46 So. 401, passed upon this question; but we do not believe that this case upholds the contention of appellee, for the obvious reason that there the law with which the court was dealing was a statute exempting factories from state and county taxes. The suit was for unpaid state and county taxes. Section 182 of the Constitution controlled in that case, while section 192 controls the present case.

The case which we think is decisive of the instant case is *Wirt Adams* v. *Lamb-Fish Lumber Co.,* 103 Miss. 491, 60 So. 645. In the Lamb-Fish Case the precise question presented in the instant case was directly involved, and the court declined to follow the contention made by the Southern Paper Company in the present case. After reaching the conclusion that the facts of this case placed the factory in the established class, it necessarily follows that the contract and ordinance was void.

It will be noted that section 182 expressly provides that the power to tax corporations shall never be surrendered or abridged by any contract or grant to which the state or any political subdivision thereof may be a party.

The factory had been located or established when the board of aldermen entered into the contract to pass the ordinance extending the corporate limits, which was agreed to by the corporation, in consideration of the promise of the city officers that they would pass the exemption ordinance.

So by agreement the established plant was taken in, and the contract to pass the exemption ordinance was subsequently executed by the passage of the ordinance.

The contract and ordinance were *ultra vires*. It is one thing to secure the location or establishment of manufactories, and quite another thing to exempt a factory already established.

We think the court also erred in striking from the files the interrogatories propounded by the revenue agent.

*Reversed and remanded.*