*Opinion of the court, by
Judge Hitchcock:
In the act of February 25, 1824, “ declaring what lands in the State of Ohio are subject to the payment of tax,” it was the intention of the legislature so to frame the law that all lands which could, consistent with public policy, be charged with a tax, should be brought into the list; and they intended to make it the interest of each individual, not only honestly and correctly to list his land, but also promptly and punctually to pay the tax. If, in any instance, heavy penalties were imposed, if forfeitures were threatened, it was with a view to effect these objects. Such penalties and such forfeitures could do no injury to the honest citizen, who is always willing to contribute his proportion toward defraying ihe necessary expenses of that government which protects him in. his life, reputation, liberty, and property, although they might bear heavy upon those (and there are some such in every community), who feel it a grievous burden to contribute a mite to promote the public welfare. Such being the object of the law, we •can not see why the court should be called upon to construe away, •or, if called upon, why it should construe away any of its provisions, to relieve those, if any thero be, who, by refusing to comply with its requisitions, have incurred its penalties.
I am aware that it is common to complain of tax laws, and there is, perhaps, no part of legislation which it is more difficult to perform satisfactorily, or in such a manner as to do exact justice to *25 all, than to frame a revenue system. We are aware, too, that courts have been astute to find defects in tax sales, so much so that in this state, at least, it has become the general, if not universal opinion, that a title derived under such a sale can not be supported. Whether courts have done wrong in this is not for us to say. The consequences, however, as members of the community, we can not but regret. That it has a direct tendency to encourage those who dislike to pay a tax in the neglect of the performance of this duty there can be no doubt.
In section 14 of the act oí 1824, it is enacted “that every person shall be liable to pay tax for the lands of which he or she shall stand seized, or may have in charge, either *as guardian, or executor, or by courtesy, or in dower for life, or in right of his wife, or as agent or attorney, having funds of his principal in his hands,” etc. The section thus makes it the duty of these several, persons to list the lands for taxation, “and pay the tax which shall yearly, and every year be assessed thereon.”
It then goes on to provide that every person so seized, as guardian, and “ neglecting or refusing to list, or pay the tax on the land of' which he or she is so seized,” shall be liable to an action, on the case, to his or her ward, for any damages which the ward may have sustained in consequence of such neglect; in like manner, any person seized as executor shall be liable to the devisee or devisees, who may have been injured by such neglect or refusal; “ and every person so being seized, or having care of lands as aforesaid, either by courtesy, or in dower, or for life, or in right of his wife, and neglecting or refusing either to list or pay the tax on the lands of which he or she is so seized, or has the care of as aforesaid, shall forfeit to the person or persons next entitled to the said lands, either in remainder or reversion, all the estate which he or she, so neglecting or refusing may have in the said lands, and shall moreover be liable to an action,” etc. The same section also gives an action in favor of the principal against his agent or attorney, where the attorney as agent, shall neglect or refuse to list or pay the tax on land, “such attorney or agent having funds of his principal in his hands.”
The provisions of this section appear to be very clear and explicit. It is made the duty of persons having the care and management of land, to list the same, and pay the tax, whether they have any interest in the land or not; and if they fail to do *26 so, it. makes them liable to an action in favor of any person who-may suffer in consequence of their neglect. It is also made the duty of those who may be seized for life of any lands to list the same and pay the tax, and upon their failure so to do, it declares that their estate shall be forfeited; in other words, that it shall terminate; and the person having the remainder or reversion, may enter. Where is the great hardship, the injustice of this provision ? ' The tenant for life is seized of the lands, he is entitled to the profits, *and certainly justice would dictate that he should pay the tax. If he does not, and the land is sold, what is the consequence? Not only his estate is gone, but also the estate in remainder or reversion. For if must be remembered that, by our -laws, the state has a lien upon all lands- for the taxes, and when those lands are sold by the proper officer, it is not the interest of the individual in whose name they are listed which is alone transferred, but it is the land itself, an absolute estate in fee-simple. . •
This section 14 of the act of 1824, if we are to give it that construction which comports manifestly with the intention of the legislature, would seem to be decisive of the case before us. The. widow of McMillan had an estate for life in the premises — this estate she assigned to Robbins ; Robbins neglected or refused not only to list, but also to pay the tax. The law is explicit, that under such circumstances the tenant for life shall forfeit his estate to the person or persons next entitled to the lands, either in remainder or reversion. It is admitted that the reversionary interest in these lands was in the lessors of the plaintiff.
It is argued, however, on the part of the defendant, that Robbins being seized in trust for minox*s, has not suoh a seizin that the law attaches a foxxfeiture to any act done by him. This ai’gument. is founded upon the assumption that a tenant for life, liable to pay the tax, and to forfeit the title for failure, can create an estate liable neither to pay the tax nor to forfeit. This assumption is one-which can'not be sustained by the court.
Robbins had an,estate neither greater nor less than his assignor or lessox*, and was ontitled to the same privileges, and subject to-the same burdens and disabilities.
It is further ax’gued, that this land was propexdy listed in the-name of McMillan’s heirs, and that the estate is not foi-feited for the failure of the tenant to list, inasmuch as there is no proof to- *27 show that the assessor or lister called upon the defendant and demanded a list. Whether this objection is well taken, we deem it unnecessary to determine, inasmuch as a forfeiture is incurred, as-well in consequence of the non-payment of the tax, as for a failure to list, and the case *shows that the tax was not paid by the tenant for life, but that the land itself was sold for the tax.
The counsel for the defendant insist, however, that there cambe no forfeiture, on account of the non-payment of the tax, because they say the legislature have not said expressly within what time it shall be paid, or the penalty incurred. By the general law on the subject, taxes are made payable to the county treasurer on or before the first day of December of each year; and if not them paid,-a penalty of ten per cent, is incurred. The tax, together-with this penalty, may be paid at any time during the month of December, and if not then paid, the land on which the tax is charged, is returned delinquent; and if a second time delinquent,' is sold for the tax. It would be absurd to say, under such circumstances, that no time is fixed within which the tax is to be paid. To us, it would seem difficult to make use of language to fix it-more definitely than has been done.
It is claimed that the defendant has a right to redeem, and that having deposited the money for this purpose with the proper officer, no forfeiture is incurred.
N.o person has a right to redeem lands sold for taxes unless he-has some interest. The interest of the tenant for life' is forfeited, not by the. sales of the lands, but by his neglect or refusal to pay the tax. The fact that the land has been sold, is evidence of the-failure to pay. And when this failure is established, the interest of the,tenant is ended. This case is not between the purchaser of the tax-title and the previous owner of the land, but between the reversioner and the tenant for life. The heirs of McMillan having the reversionary interest, would have the right of redemption;, but Robbins has not, because his interest in the land is entirely gone.
Another ground ot defense is, that the law under which thm plaintiff seeks to recover is unconstitutional. If .this be true — if it is clearly against any provision of the constitution — this court will not enforce it. We have not been referred to that part of the-constitution which is violated. Perhaps it is section 16 of *28 article 8. This section provides that “ no ex post facto law, nor any law impairing the vailidity of contracts, shall ever be made; and no conviction *shall work corruption of blood, or forfeiture of estate.” The section of the law now under consideration is not ex post facto. It has no retrospective operation ; it is entirely prospective in its requisitions .and effects. Neither does it interfere with the validity of a contract.
'But it is said to work a forfeiture of estate. There is no difB- • culty in ascertaining the intention of the convention, in introducing this clause into the constitution, and it is impossible to believe that a case in any shape similar to the one now before the court, was in view. We know that in England, the conviction of many •offenses, works “corruption of blood and forfeiture of estate.” ámd this operates in many, if not in all cases, from the time of the aommission of the offense. The forfeiture is to the king. The ■blood is also corrupted. The attainted person can not inherit lands from his ancestor, neither can he transmit an inheritance to his heirs. In truth, the punishment of the offense is not confined to the individual offender, but is extended to his wife, his children, and his heirs, by depriving them of his estate, and thereby, in some instances, of the means of subsistence. It was against a state of things like this, that the convention intended to provide, and they have, therefore, put it beyond the power of the legislature to enact “that any conviction shall work a corruption of blood or forfeiture of estate.”
What is the case before the court? The law of the state has provided, that, with some few exceptions, all lands shall be subjected to taxation; if the taxes are not paid, the lands shall be «old, and the rightful owner divested of the title, and the same be transferred to the purchaser. So far there is no complaint. This is all right and just. It is well, because so far the law has ■said nothing about forfeiture. But what is the effect? The owner of the land loses his title as completely as if the same had been in express terms declared to be forfeited.
The same law has made it the duty of a tenant for life to pay •the tax upon the land of which he is thus seized. This is admitted on all hands to be just and proper. Receiving the rents and profits of the land, it is right he should pay all taxes with which fit may be burdened. But if it does not pay the tax, the law dedares that his estate shall be forfeited *in favor of the re *29 mainder-man or reversioner. It is not the thing done, but the word used, which makes the difficulty. If the legislature, instead of saying the tenant for life “shall forfeit ” his estate, had said, “such estate shall cease and determine,” I apprehend no one would have suspected an interference with the constitution. This is the effect and the only effect produced, and I deem it an immaterial matter what words are used. To my. mind it is clear that there is nothing in this section 14 of the act of 1824 interfering with the provisions of the constitution.
Upon the whole, a majority of the court are of opinion that, the law arising upon the agreed state of facts is with the plaintiff, and-judgment must be entered accordingly.
Judge Collet dissented.