GRACE *v.* REED.[*]

(In Banc. June 7, 1926. Suggestion of Error Overruled June 21, 1926.)

[108 So. 799. No. 25559.]

1. LIFE ESTATES.

Life tenant is liable for fire insurance premium on property in which she holds life estate.

2. WILLS. *Provision devising all residue of estate held to cover all remaining property, notwithstanding requirement therein that deed be executed to purchaser after sale and subsequent provision devising undistributed sums.*

Provision in will devising all residue of estate, and empowering executor to execute deeds thereto after sale, *held* to be used in its usual and technical sense, and to cover all of remaining property, notwithstanding statement that deeds were to be executed, and that there was subsequent provision covering undistributed sum.

3. WILLS.

Supreme Court will not construe item of will so as to overcome technical and well known term "residue of my estate," unless it is manifest that decedent intended to do so.

ANDERSON, J., dissenting.

---

*Corpus Juris-Cyc References: Estates, 21CJ, p. 955, n. 57; Wills, 40Cyc, p. 1396, n. 39; p. 1397, n. 40; p. 1398, n. 47; p. 1400, n. 57; p. 1488, n. 79.

APPEAL from chancery court of Lauderdale county. HON. G. C. TANN, Chancellor.

Suit between C. P. Grace and J. E. Reed, executor of the estate of L. Richardson, deceased, involving the construction of the will of L. Richardson, deceased. From the decree, the former appeals. Affirmed.

*V. W. Gilbert* and *Wyatt Easterling,* for appellants.

I. The only problem is to ascertain from the four corners of the instrument the intention of the testator. While this will was obviously drafted in great haste, yet to partisan eyes, when it is taken as a whole, it seems very clear what the intention of the testator was.

He had at the time of its execution these notes and possibly some small sum of money in the bank. Every provision and word in the will is to be given effect. We must, therefore, not treat the residuary item 6 as surplusage. And at the same time he recites that he has made ample provision for his wife "heretofore in the will." In addition to the money and notes he had his homestead and eight acres of land.

What, then, did he intend his executor to "sell?" Evidently only those things that are usually sold in the ordinary affairs of life. We must look to the Law of Sales and not to the Law of Negotiable Instruments. While, loosely speaking, there is a sale of notes, correctly speaking, they are transferred or assigned. In addition to the direction to sell, we have a direction as to what the executor is to do when he sells: He is to execute deeds to purchasers. We do not transfer negotiable instruments by deeds; money in banks does not pass by deed. "A sale means, at all times, a contract between parties to give and pass rights and property for money." *State* v. *Austin,* 23 So. 34.

The will provides that after the sale and the execution of the deeds, the "proceeds are to be distributed in six equal parts." If the will had merely said to distribute the "proceeds" the inference would have followed that a sale was implied. *Corley* v. *Bishop,* 58 So. 360.

How much stronger, therefore, is the case where the will itself directs a sale and a division of the proceeds and these proceeds mean money? Is it not clearly apparent then that what the testator meant was a sale of such part of his estate as is usually sold in the course of administration?

It would seem from the wording that he had reference to the lands; the contemporary facts would indicate the necessity of a reference to land as above shown. If it referred to the notes, and there was a necessity for selling the notes, then the executor breached his duty in collecting the money by foreclosure; and he could not, without a similar breach of duty, have accepted payment of the notes by the debtors, for it would have been his duty to sell the notes. The very statement shows the fallacy of such a construction.

In the argument in the court below much stress was laid on the words in item 5 "Executor to sell . . . all the residue of my estate," the argument being that these words carried all the estate except the provisions of items 1 and 2. And it was sought to evade the succeeding words "to execute deeds thereto" by construing deeds to mean an instrument necessary to pass title to real or personal property.

Clearly, the word "residue," when taken in connection with the other provisions of the will, means such remainder of his estate as is subject to sale, subject to being converted into money, and not what is already money.

Besides, to define this word "residue" as the executor insists that it should be defined, would render item 6 of the will surplusage. It cannot be argued that item 6 was intended to cover omitted property, for under the executor's contention the word "residue" carried everything; there could be nothing omitted.

When throughout this brief we use the expression the sale of such property as is ordinarily sold in the course of administration of estates or similar language, we

deemed it scarcely necessary to direct the court's attention to the statutes of the state on this subject. But see sections 1677 and 1730, Hemingway's Code.

II. The eighty-three dollars and thirteen cents charged against the life tenant for premiums on fire insurance policies was error. 21 C. J., Estates, sec. 92.

*W. C. Sams,* for appellee.

I. The object always sought in construing a will is the ascertainment of the testator's intention. *Lusby* v. *Cobb,* 89 Miss. 726; *L'Hote* v. *Roca,* 102 Miss. 121; *Chrisman* v. *Bryan,* 108 Miss. 311; *Rives* v. *Burrage,* 110 Miss. 789. The intention must be ascertained from the words used in the will itself, since it is the function of the court merely to interpret, not to make wills. Also, in the interpretation of a will it is always competent to look to the situation of the testator with respect to his estate, his environment as related to his estate or his devisees or legatees at the time of the making of the will. *Lusby* v. *Cobb,* 80 Miss. 726.

Also, the courts have held that wills are the most unartificial of all legal instruments, and least to be governed in their construction by the settled use of technical terms. *Lusby* v. *Cobb, supra; Haughton* v. *Brandon,* 40 Miss. 729.

Although there may be apparent inconsistencies in several parts of the will, yet if there be clearly discerned a general intent, that should prevail and override the particular, although the latter be first expressed. The intention must control if it can be made compatible with the language used. *Watson* v. *Blackwood,* 50 Miss. 15.

In *Lusby* v. *Cobb,* above cited, the court construed the word *kind* to mean *kin.* In *Bard* v. *Boucher,* 60 Miss. 326, the court construed *rent* to mean *real,* in order to arrive at the real intent of the testator. The courts in the construing of a will will not allow themselves to be

bound and fettered by a legal technical definition of words, but will look to the entire will and the surroundings of the testator in the interpretation of the will, and the true meaning of the words employed by the testator attempting to dispose of his property. *Bosley* v. *Wyatt,* 14 How. 390, 14 L. Ed. 468.

Now what property was referred to in item 5? "*All of the residue of my estate.*" This is plain, unmistakable English. There is no chance of misunderstanding it. It is not vague or uncertain, and means all the rest of his estate, personal, and mixed property, both tangible and intangible, left after taking care of items 1, 2 and 4.

The word *estate* used in a will means both real and personal property unless the context shows to the contrary. *Andrews* v. *Brumfield,* 32 Miss. 107; *Caffey* v. *Tindall,* 99 Miss. 851.

The objectors seem to stress with significance the word *sell.* Here are some of the definitions found in books: "Sell means a divestiture of title"—*Builders & Painters Supply Company* v. *Lucas,* 24 So. 416-418. "To sell a thing is to part with ownership thereof to the buyer for a compensation."—*State* v. *Peo.* 42 Atl. 622-623.

After the execution of said note and deed of trust, the testator during his lifetime held equitable title in and to said lands described in said deed of trust. *Chrisman* v. *Magee,* 108 Miss. 561. As such this equitable title and the notes secured by said deed of trust were subject to sale.

In my opinion, the plain intent of item 5 of the will simply meant for the executor to *reduce* all the rest of the estate of the testator into money and distribute the same as therein directed. I submit that the acts of the executor, appellee herein, strictly came even within the very narrow and technical restrictions and limitations contended for by counsel for the appellants by the little word *sell,* marooned and isolated from every other part of the will. A will must be construed as a whole. *Selig* v. *Frost,* 110 Miss. 584; *Harvey* v. *Johnson,* 111 Miss.

566; *Dean* v. *Nunnally,* 36 Miss. 358; *Sorsby* v. *Vance,* 36 Miss. 564; *Tatum* v. *McLellan,* 50 Miss. 1; *McGehee* v. *McGehee,* 74 Miss. 386; and *Ball* v. *Phelan,* 94 Miss. 293.

Not only does item 5 of the will provide that *all* of the residue of his estate should be reduced to money and distributed in the manner provided for therein, and not merely a *part* either of the personal or real property belonging to said residue of his estate; but item 6 of said will shows clearly the intent of the testator that *item* 5 of the will was intended to dispose of every part and parcel of his estate, real, personal, or otherwise.

The whole contains all of its parts. The residue of the testator's estate after taking care of the provisions of items 1, 2 and 4 includes real property, personal property, choses in action; in fact any property of whatever character or kind that was left.

I find a decision from the supreme court of Maine that holds that the negotiation of all bank papers by a bank in the usual way is to be construed as a sale. See *Cooper* v. *Curtis,* 30 Maine 488-490.

II. The second contention is whether or not it is the legal duty of a life tenant to pay the premiums on fire insurance taken out to cover the homestead occupied by the life tenant during her life. The appellant contends that it is not the duty of the life tenant and cites 21 C. J. 954, Estates, sec. 92. A reading of this authority will not support the contentions of the appellants. On the contrary, the case of *Rogers* v. *Genung,* 76 Atl. 233 and *Perrins* v. *Newell,* 23 Atl. 492, cited in the notes of 21 C. J. 954, authorize the payment of insurance by the life tenant.

The circumstances in the case at bar fully justify a charge of the premium for insurance against the interest of the life tenant during her lifetime, and the charge was made for only said period. She enjoyed the life tenancy of the property so insured during her life after

said testator and up until her own death. This insurance protected her life estate in the home and furnished an assurance to her of shelter during her life. A careful reading of par. 92, 21 C. J., pp. 954-955, is authority that the life tenant *should* pay the premium on insurance rather than the opposite.

Lastly, the chancellor rendered his final decree *after testimony had been introduced and upon the facts testified to from the witness.*

Argued orally by *V. W. Gilbert,* for appellant, and *W. C. Sams,* for appellee.

HOLDEN, P. J., delivered the opinion of the court.

The suit involves the construction of the will of L. Richardson, deceased, and presents the question whether or not the distribution of the estate of the deceased should go, under item 6, to the wife, or to the residuary legatees, under item 5 of the will. The will is in the following language:

"State of Mississippi, County of Lauderdale.

"I, Lunsford Richardson, of the county of Lauderdale and state of Mississippi, being of sound and disposing mind, memory and understanding, do make, publish and declare this my last will and testament, revoking any and all previous wills and codicils made by me, and expressly revoking the will made by me dated April 9, 1910, and witnessed by John E. Wright, and Gabe Jacobson, and also expressly revoking the will made by me dated May 29, 1915, and witnessed by E. B. McRaven and H. L. K. Barnes, and also expressly revoking the will made by me dated June 12, 1915, and witnessed by Paul Brown and Joel Buntin.

"Item 1. I desire that all of my just debts be paid out of my estate.

"Item 2. I desire that I be given a suitable burial and that a tombstone be purchased from the funds of

143 Miss.—28.

my estate and placed on my grave, the cost of the tombstone and the proper fixing up of the grave to be left to the discretion and judgment of my executor hereinafter appointed.

"Item 3. I devise and bequeath all of the property estate and effects of every kind and character of which I may die be seized and possessed as follows, to wit:

"Item 4. I give and bequeath to my beloved wife, Duan Richardson, all of my household property and effects and my homestead situated in the northwest quarter (N. W. ¼) of the southeast quarter (S. E. ¼) of the southwest quarter (S. W. ¼) of section thirty-one (31) township seven (7) north of range sixteen east (N. R. 16 E.) in Lauderdale county, state of Mississippi, containing one and one-half (1½) acres more or less, for and during her natural life, with power to sell and dispose of the same as she may see fit; but in such event the proceeds are to be placed in the *corpus* of my estate subject to the provisions hereinafter specified, and should she not sell the same during her lifetime, then at her death the said property shall revert to my estate and be disposed of as is hereinafter provided for in the case of the residue of my estate.

"Item 5. I desire that my executor hereinafter appointed first take care of the provisions hereinbefore mentioned and after so doing then I hereby expressly direct my executor to sell as soon as can be done without too great a loss, at public or private sale, separately or otherwise, as he may deem best, all of the residue of my estate, and I hereby expressly empower him to execute the deeds thereto to the purchaser or purchasers as fully as I could if alive. And after so doing then to distribute the proceeds in six equal parts as follows, to-wit:

"To my wife, Duan Richardson, one equal part in addition to the provisions made for her in item 4.

"To my son, Lee Richardson, one equal part.

"To my daughter, Mrs. Annie Richardson Vinson, one equal part.

"To my daughter, Mrs. Lessie Richardson Hopgood, one equal part.

"To the children of my deceased daughter, Mrs. Minnie Richardson Sharp, namely, Joe Sharp, Luther Sharp, and Leslie Sharp, one equal part which' is to be divided equally between them, that is each of them is to receive one third of said part:

"To the heirs of my deceased son, Will Richardson, Myrtle Richardson, his widow one equal part which is to be divided equally between them, that is each of them is to receive one-half of said part.

"Item 6. Should there be any sum remaining undistributed after all of the foregoing provisions of this will have been fully complied with, then I desire that said sum, whatever it may be, be given to my wife, Duan Richardson, in addition to the provisions already made for her.

"Item 7. I desire that my wife, Duan Richardson, claim no allowance as I have made ample provisions for her heretofore in this will, and as she has a separate estate.

"Item. 8. I hereby constitute and appoint J. E. Reed of Meridian, Mississippi, to be the sole executor of this my last will and testament, and I do expressly relieve him from giving any bond whatsoever as such, and I also do expressly relieve him from making and filing any inventory of my estate, and I also do expressly relieve him from having any appraisement of my estate made and filed.

"Witness my signature this 18th day of February, 1916.

"L. RICHARDSON."

At the time of the death of the testator he had fifty-one dollars and thirty-eight cents in the bank, and also held promissory notes on which there was a balance due of

two thousand six hundred twenty-two dollars and twenty-seven cents. These promissory notes were secured by a mortgage on real property. This mortgage was foreclosed some time subsequent to the death of the testator, and the proceeds therefrom is the main subject of this litigation; that is, as to whether it should be distributed under item 5, which would result in its going to the legatees named, or whether it should be distributed under item 6, which would result in the amount being given to the wife of the deceased. If we decide that the distribution ought to go under item 5, as was held by the lower court, and not that the wife is to take the proceeds under item 6 of the will, then an affirmance of the decree would result here, because the other question involved, to-wit, whether the wife, who was a life tenant of some of the real estate left by the deceased, should pay the fire insurance premium upon the property which she was to enjoy for life must be decided in the affirmative, and against the contention of the life tenant.

Therefore, we come to the main question as to whether or not the testator intended that all of his property, including money, choses in action, and all character of property, should go to the legatees named by him, or whether he intended that all of his property should go to such legatees, except his money and the two thousand six hundred twenty-two dollars and twenty-seven cents mortgage notes, which should go to his wife under item 6 of the will.

The argument is made by appellant that the language used by the testator in item 5 clearly demonstrates that he did not intend that the notes or his cash money should be included in the language "all of the residue of my estate," as used in item 5, but that the decedent intended to limit the words "all of the residue of my estate" to real property, and not to the notes or money in the bank, because, if the decedent had so intended, he would not have used this language: "I hereby expressly direct my executor to sell as soon as can be done without too great

a loss, at public or private sale, separately or other-wise, as he may deem best, all of the residue of my estate, and I hereby expressly empower him to execute the deeds thereto to the purchaser or purchasers as fully as I could if alive;" that the testator would not have used the words "sell  .  .  .  at public or private sale,  .  .  .  all the residue of my estate,  .  .  .  and execute the deeds thereto to the purchaser," unless he had meant the sale of property other than the notes and money in bank, because the sale of money or mortgage notes and the execution of a deed thereto are not contemplated by the ordinary mind; that the disposition of such property is not by sale and deed, but otherwise, and, that being true, it was clearly intended by the testator that this character of property was to be excluded from the "residue of my estate;" and that the manifest intent of the testator will control in the construction of the will, even though it be contrary to the well-known meaning of the technical term used, "residue of my estate;" that, unless this construction is adopted, then item 6 of the will is meaningless, because there would be nothing left to go to the wife under that provision.

We have reached the conclusion that the construction placed upon the will by the chancellor is correct. The language of the testator in item 5, that is, that "all the residue of my estate" is to be understood in its usual and technical sense, and covers all of the remaining property of the deceased, that the decedent requested the sale of the residue, including the notes and money in bank, and that a deed be executed to the purchaser, instead of adopting the usual language with reference to the disposition of money or notes, is not sufficient, in our opinion, to restrict or overcome the well-known meaning of the term "residue of my estate." It may have been that the decedent had in mind that all of his property would be sold that ought to be sold, and, after it was reduced to money, that it would be added to the other money on hand, or that the money would be col-

lected on the mortgage notes and distributed to the legatees named in item 5 of the will. This is just as probably true as the other theory presented by the appellant, and we will not construe the item of the will so as to overcome the technical and well-known meaning of the term "residue of my estate," unless it is plain and manifest that the decedent intended to do so.

As to the meaninglessness of item 6 of the will, we do not consider this fact, if it be a fact, sufficient to overcome the accepted meaning of the term "residue of my estate." The decedent may have had in mind some other property that might possibly come to his estate at some future time. This cannot be known, but it is apparent to us that, if the testator had intended that the mortgage notes and the cash money should not have been included in the term "residue of my estate," he could have easily said so by excepting this class of property from the remainder of the estate, but he did not do this, and we therefore think he intended what his language expresses.

In view of these conclusions, the decree of the lower court will be affirmed.

*Affirmed.*

Anderson, J., dissents.