CITY OF GREENWOOD *v.* HUMPHREYS.

(Division B. April 14, 1930.)

[127 So. 694. No. 28333.]

880

(Division B.   June 9, 1930.)

[128 So. 885. No. 28333.]

A. H. Bell, of Greenwood, for appellant.

S. L. Gwin and Means Johnston, both of Greenwood, and S. Rosenthal, of Jackson, for appellee.

Argued orally by **A. H. Bell**, for appellant, and by **Means Johnston** and **Simon Rosenthal**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Certain town lots, the property of appellee, in the city of Greenwood, escaped municipal taxation for the years 1926 and 1927 because of the fact that the statutory equalization notices were not given in respect to the city assessments of those years. Therefore in 1928 the city clerk, as municipal assessor, made a back assessment of said property for said years, proceeding therein as provided in section 7004, Hemingway's 1927 Code, which section so far as pertinent to the case in hand reads as follows: "The municipal assessment of all property subject to taxation, except such as is required by law to be assessed by the state railroad assessors, shall be made by the clerk or tax collector, by copying from the county assessment rolls, that portion thereof which embraces property or persons within the corporate limits. The copy may be made at any time after the assessment rolls are approved, and all changes in the county assessment thereafter made, shall likewise be made in the copy, said copy shall be placed in the hands of the municipal tax collector, and be his warrant for the collection of municipal taxes. In all cases where persons or property of the kind and description above referred to, have escaped taxation for any previous year, the clerk shall assess the same for taxation, and his assessment, when approved by the mayor and board of aldermen, on notice to the person assessed, shall be binding and conclusive unless appealed from within five days after its approval, but

the municipal authorities may provide for a separate assessment to be made annually of all taxable property except that required by law, to be assessed by the state railroad assessors. . . .'' `

Appellee contends that there is no authority under said section to back assess said property, because, for the two years mentioned, the property was actually on the assessment rolls, and, although the said rolls for said years were void, the property had not ''escaped taxation by reason of not being assessed;'' citing Adams v. Luce, 87 Miss. 220, 39 So. 418; Long-Bell Co. v. McLendon, 127 Miss. 636, 90 So. 356; Robertson v. Bank, 123 Miss. 380, 85 So. 177. The cases cited and the holdings therein are not applicable, because they involved the powers of the state tax collector, whose authority is expressly limited in such cases to property which had not appeared on the assessment rolls, while the authority of the county or municipal assessor comes into effect when for any reason in respect to the assessment the property has escaped taxation. The case here in hand is controlled by Reed, Tax Coll'r, v. Norman-Breaux Lumber Co., 149 Miss. 395, 115 So. 724, from which it follows that the stated contention of appellee is not sustained.

Appellee suggests in the next place that the said back assessment cannot be permitted because appellee had enjoined the collection under the original assessments for 1926 and 1927, and, upon a final hearing in the chancery court, the said court had adjudged the said assessments to be void; wherefore, as contended by appellee, the issues are res adjudicata. It is admitted that no notice was given the taxpayers under the original assessments of 1926 and 1927, and therefore the adjudication mentioned was inevitable. But this is no more conclusive on a new assessment, call it a back assessment. than would a void judgment in a suit on a promissory note. void because of no service of summons on the defendant. be conclusive against a new suit on that note on proper service of sum-

mons. We must hold, therefore, that this position of appellee is not well taken.

The principal questions in the case turn upon the manner in which the assessment rolls of the city of Greenwood have been made up. It appears that in 1924 the city entered into a contract with the operators of what is called the "Sommers System of Realty Valuation," under which contract the said operators were to make up a complete card and map appraisal of all the real property in the city in terms of unit-foot valuations, and that these valuations and appraisals were to be furnished the city in convenient form for ready assistance to the city authorities in making the municipal assessments. These appraisals and all the data required under said contract were made by the said operators and were furnished to the city, and, in order to better adjust its rolls to said data, the city had printed on its rolls not only all the columns for the matter required by the ordinary statutory method, but also two columns for the Sommers number of the lot and for the number shown on the Sommers map.

In respect to this method of assessment, appellee raises the question, first, that it is not competent for the city in making its assessments to do any more than to copy the county assessment rolls with the changes as made in those rolls, and later, as provided in section 3422, Code 1906, section 7005, Hemingway's 1927 Code, to hear the taxpayers in respect to changes in valuation. In other words, that the city can make no independent assessment. Through a long and uniform course of administration, it has been generally considered that a municipality, if good reason for so doing exists, may make its own independent assessment, so long as the general form of the rolls used in the county is followed and fundamental principles required by our general ad valorem revenue laws are observed. The provision in the statute in respect to copying the county assessment rolls has two objects: First, to provide an expeditious and economical

method for making municipal assessments; and, second, to avail of the opinions and conclusions of the county taxing authorities by way of assistance in the making of said municipal assessments. But the said method has never been regarded as exclusive or controlling. To hold now, after all these years, in accordance with the contention of appellee in the particular mentioned, would bring on mischiefs, in respect to hundreds of city assessment rolls in the past, the extent of which we could not estimate, and we must decline the hazard.

Nor do we find any fundamental or other objection to the said Sommers system when used by the assessing authorities, not as an assessment, but as an assistance in making assessments. As said in Redmond v. City of Jackson, 143 Miss., page 121, 108 So. 444, 445, "the value of property for assessment in a taxing district like a city is a difficult matter." It is important that all property, by accurate descriptions, shall be on the assessment rolls, and that all shall be assessed equitably and justly in point of true value. It is manifestly right and proper that the city assessing authorities shall bring to their assistance reasonable methods for arriving at just proportions on true values, and this Sommers system, it appears to us, is a valuable aid in that respect when properly used.

But the trouble in this case is that the city has not used the so-called system properly. The city assessor who made the assessments for 1926 and 1927 testified that he accepted the valuations shown on the Sommers data, and that he (the assessor) did not use his own judgment on any assessment he made—that he used the Sommers data as to valuations entirely and was governed by it, applying to those valuations only certain uniform and general, city-wide percentages of reduction as directed by the city council. The assessor who made the back assessment here in question testified that she merely copied the assessments for 1926 and 1927 and arrived at the valuations in no other way than that already men-

tioned. An this testimony of these officers was admitted without objection.

"An assessment can be made only by an official designated by law to make it. An attempted assessment by any person than the person provided by law is void. . . . Assessment is a quasi-judicial act which cannot be delegated by the assessor to a clerk or assistant. . . . But where, after property has been valued by an assessor's assistant, the assessor either approved the valuations or changed them to correspond with his own judgment the assessment was the act of the assessor and not of his assistant. . . . An assessment is not void because made in the first instance by a clerk where the assessor examines and supervises the work as it progresses and adopts it when completed." 3 Cooley, Taxation (4 Ed.), sections 1003, 1046, 1052; 44 C. J. 1322-3.

It is not required that the assessor shall do all or even a part of what is clerical, or that he shall affix the several values in the first instance; nevertheless, the property owner is entitled to the judgment of the assessor as to the value of his property, and it is therefore indispensable that the assessor shall examine the items which are to be returned under his certificate, and shall exercise that measure of independent thought and judgment upon the assessments which will make them in fact his assessments rather than of some other person. The assessor must be more than a mere copyist, and his exercise of judgment must be more than a negligible formality. City of Tampa v. Kaunitz, 39 Fla. 683, 23 So. 416, 63 Am. St. Rep. 202; Reed v. Cedar Rapids, 138 Iowa 366, 116 N. W. 140; 1 Blackwell, Tax Titles, section 168.

The circuit court has found, under the evidence in this case, that the duty mentioned was not performed by the assessor, and, that conclusion being supported by the evidence, the judgment must be affirmed.

Affirmed.

On Suggestion of Error.

Anderson, J., delivered the opinion of the court on the suggestion of error.

The effect of the decision of the court in State ex rel. Jordan v. Mayor and Commissioners of City of Greenwood (Miss.), 127 So. 704, was to hold that the ordinance of annexation of North Greenwood is, for all practical purposes, now valid, not invalid, and necessarily that its validity, so far as all practical purposes are concerned, related back to the date of its passage. It is true that the court held that the ordinance was invalid at the time it was passed, but that at this late day, for the reasons set out in the opinion, the state would not be permitted to question its validity. Certainly, for a greater reason taxpayers of the municipality will not now be permitted to question the validity of the ordinance.

Under section 3303 of the Code of 1906, section 6734, Hemingway's 1927 Code, taxpayers were given the right of appeal from such an ordinance. No appeal was prosecuted either by appellee or any one else. Appellee's attack on the ordinance is a collateral attack. Having failed to prosecute an appeal from the ordinance, appellee is estopped to question its validity in this proceeding. Adams, Revenue Agent, v. Lamb-Fish Lumber Co., 103 Miss. 491, 60 So. 645.

The case principally relied on by appellee as authorizing her attack on the ordinance is City of Pascagoula v. Krebs, 151 Miss. 676, 118 So. 286. In that case the city of Pascagoula by ordinance undertook to extend its limits, including therein territory within the corporate limits of the town of Eastside, which latter municipality was then in existence, functioning as such, and continued to function for years after the ordinance of annexation. The town of Eastside took no part in the annexation proceedings, and neither the city of Pascagoula nor the town of Eastside knew until shortly before the bringing of the action in that case that the territory involved had been

by ordinance attempted to be incorporated into the former. The proceedings were held to be void, and that a taxpayer in the territory involved could question the legality of the ordinance of annexation.

We have no such case as that here. When the ordinance of annexation was adopted, North Greenwood had ceased to function as a separate municipality. That ordinance was passed in 1922. North Greenwood has not functioned as a municipality since.

We hold that at this late day, for the reasons set out in the opinion in the Jordan case, that neither the state nor any taxpayer of the city of Greenwood can question the legality of the ordinance. If there is no one entitled to question the legality of the ordinance now, that means that the ordinance is, for all practical purposes, valid, and its validity, as a practical proposition, relates back from the time of its adoption. In other words, conditions have arisen which make that which was void to begin with valid from its inception.

Suggestion of error overruled.