FEDERAL LAND BANK OF NEW ORLEANS *v.* NEWSOM *et al.*

(In Banc. Feb. 24, 1936.)

[166 So. 346. No. 31733.]

James McClure, of Sardis, for appellant.

Herbert Holmes, of Senatobia, and John W. Crisler, of Clarksdale, for appellees.

138

Argued orally by **L. F. Easterling** and **James McClure** for appellant and by **John W. Crisler** and **Herbert Holmes** for appellees.

**Griffith, J.,** delivered the opinion of the court.

Upon the coming in of the suggestions of error in this case, and upon examination of them, it was determined to set aside the decree of affirmance entered by Division B on a former day, and to remand the case to the docket for consideration and determination by the full court in banc. Upon such consideration we have concluded that the opinion heretofore delivered by Division B and reported in 161 So. 867-868, is correct when taken in connection with the opinion in the companion case to which reference is therein made (161 So. 864) and we refer further to the additional opinion in the companion case this day delivered, 166 So. 345, and we make the same a part hereof.

The point which has been particularly urged upon us is that the subrogation of appellant to the tax lien of the state and county ought not to be upheld because in this case appellant has a valid deed of trust upon the existing life estate, and that, because it was the duty of the life tenant to pay the taxes on the entire estate in fee simple, appellant can obtain no higher rights in respect to the payment of the taxes than the life tenant would have had in the payment thereof. All of us agree that it is the duty of a life tenant in possession to pay the taxes on the land in fee, and, although it may be, as to which we express no opinion, that under section 3146, Code 1930, a separate assessment may be made of a life estate, it is doubtful if anybody in this state ever heard of a separate assessment of a life estate, for the very reason that it is the duty of a life tenant to pay the taxes on the entire fee-simple estate. But no such duty to pay the taxes rests upon the mortgagee of a life tenant—no more so than upon the mortgagee of an owner in fee. See 41 C. J., pp. 636, 637, and the numerous cases cited in the notes.

Consequently the assessment of the taxes in this case was, as always in such cases, upon the entire or fee-simple interest in it, and the sale for taxes, from which appellant redeemed, was made according to the assessment, as it had to be. The lien which the state and county held for taxes was upon the fee-simple estate, not upon any life estate or any other estate less than in fee-simple. Appellant was obliged, therefore, to redeem and pay the taxes on the entire estate or else upon none at all. The lien by way of subrogation must in consequence be co-extensive with the lien which appellant was obliged to discharge, if any at all were to be discharged.

Taxation upon lands in this state is primarily against the property, and the tax lien is a lien in rem, section 3120, Code 1930; and the name or names of the owner or owners, or their personal status in relation to the prop-

erty, or the kind of interest therein which they respectively own, is of no consequence, so far as the lien is concerned, when, as here, there has been an assessment of the land in fee. It may even be assessed to unknown persons. And, when we hold, as we do in accord with the weight of authority, that a mortgagee who pays taxes or redeems from tax sales for the protection of his security is entitled to become subrogated to the paramount lien of the state, county, or municipality, it further follows that the lien to which the mortgagee is subrogated is the lien which the state, county, or municipality holds, and that, since this is a lien in rem upon the entire estate, and without regard to persons, the fact that the mortgagor owns a less estate than a fee simple disappears as an element in the legal equation. The lien being a lien in rem upon the entire estate and against everybody, and being paramount to all other interests, that lien will be deemed as transferred by the state, county, or municipality to the mortgagee. This is the reasoning in the cases cited in the note 6b, pp. 1374-1377, in 84 A. L. R., and we follow that line of cases, since those cases seem to run in accord with the nature of the lien for taxes on real estate which results from our statute, section 3120, supra.

But it is argued that the mortgagee could have proceeded under sections 3265 and 3266, Code 1930, to have the taxes as due on the life estate apportioned, and thereupon could have redeemed the life estate without payment of the entire fee-simple taxes, and that, not having done so, appellant was a volunteer as to any taxes beyond the amount apportionable to the life estate. We are of opinion that the said sections are not applicable to any such interest as a life estate, even if we concede, for the sake of the argument, that a life estate may be separately assessed under section 3146, Code 1930. Sections 3265 and 3266, Code 1930, are available where a mortgagee or other person in interest claims an undivided share in the

entire tract, as, for instance, an undivided one-half interest, or where the mortgagee or other person claims forty acres in a tract of one hundred and sixty acres assessed in solido. But to permit the clerk to value a life estate for assessment, and thus separate it from a fee-simple assessment, would not only be impractical and unworkable, but would, perhaps, encounter constitutional obstacles, in that it would by indirection constitute the clerk a sole assessing officer, when he is not the person who is designated by law to make assessments. City of Greenwood v. Humphreys, 157 Miss. 879, 127 So. 694, 128 So. 885, and is not of property which had escaped taxation, but of property already assessed by the constitutional assessment authorities, and in such manner that no tangible clue can be obtained from the assessment as to what value would have been ascribed by the regular assessment officers to any such estate as a life estate, when the only assessment made by them was of a fee simple interest or entire estate.

We affirm that the bank has a valid mortgage on the existing life estate and a lien upon the entire estate by way of subrogation for the taxes mentioned in the bill of complaint, and, in affirming the decree of the chancellor, we go no further than above stated. When or how the lien for the taxes is to be foreclosed we leave open for consideration first by the chancellor, as mentioned in the opinion in the companion case.

Affirmed and remanded.

### DISSENTING OPINION.

**Ethridge, J.,** delivered a dissenting opinion.

I am unable to concur in the opinion of Judge GRIFFITH, and I do not think the authorities cited, either in the original or the present opinion, support the conclusions arrived at by him. Those cases are either ones where the mortgagee has paid the taxes for the mortgagor,

which he was under duty to pay, and for that reason has acquired a right or subrogation, or else they are based upon statutes different from the statutes and decisions of Mississippi.

It is the duty of the life tenant to pay the taxes, and the remaindermen are under no duty to the life tenant, or those holding under him, to pay the taxes. To hold otherwise, would enable the life tenant, and those holding under him, to evade their duty to keep the taxes paid for the remaindermen.

Furthermore, it is the law in this state that, unless a statute gives a right to subrogation or a lien to one who pays the taxes, no such right exists. This was expressly held in Griffing v. Pintard, 25 Miss. 173, in which it was said that the doctrine of subrogation does not apply in cases of rights and remedies of the state against delinquent taxpayers. In that case the sheriff paid the taxes for the taxpayer, and, not being repaid, undertook to subject the land to his demand, and the court held that it was "manifest, that the land was not sold for the purpose of collecting any taxes due by Bowen to the State or county, but only to reimburse Moore the money which he had advanced. If it be contended, that he had power to sell for this purpose, then it must be shown, to sustain the proposition, that on payment of the taxes he was subrogated to the rights and remedies of the State against delinquent taxpayers. Nothing can be found in either the letter or policy of the law, giving countenance to this position."

In Cannon v. Barry, 59 Miss. 289, it was held that only the rights of the life tenant pass to a purchaser at a tax sale. It was also there held that the life tenant took the land as a whole and was bound to preserve it, and that the taxes were his individual debt, and, if he did not pay the tax, the court should appoint a receiver to take charge of the life estate and pay the taxes from rents and profits. Therefore, under this case, it being the duty of the life tenant to pay the taxes, and he having failed to do so, the

land was sold, and the court ordered him to pay the taxes and redeem the land. This case clearly holds that the life tenant alone is to pay the taxes accruing during his tenancy.

In the case at bar the court should, instead of decreeing a portion of the taxes against the remaindermen, have taken possession through a receiver, and applied the rents and profits to the payment of the taxes, or should have sold the life estate and paid the taxes from the proceeds of the sale.

In Chiles v. Gallagher, 67 Miss. 413, 7 So. 208, it was held that, where defendants set up a tax title which they acquired, and some of them occupied such trust relation that they could not assert it, and the complainant failed to show a right to relief, it was conceded that the tax title was invalid, and the complainant not entitled to a decree. It was also held that one in possession of land, receiving the rents and profits therefrom, was under obligation to pay the taxes, and that one holding a tax title from the life tenant merely holds same as trustee, ex maleficio, for the real owner. The facts of this case are interesting, and a discussion of the applicable law shows that it is the settled principle of law in this state to compel the life tenant to pay the taxes, and that those dealing with him know of his relation to the remaindermen, and cannot defeat their rights by permitting tax sales to be made, and then undertaking to charge the remaindermen with the obligation to pay the taxes.

It seems to me that these cases alone show the law to be that one who deals with a life tenant cannot acquire a greater right than the life tenant as against the remaindermen.

The remindermen, certainly, owe no duty to the mortgagee of the life tenant. He took his mortgage, and, by so doing, acquired only the rights of the mortgagor. It was charged with notice of everything in its chain of title, and we have held that mortgagees, in such cases,

are charged with notice of the will creating such remaindermen.

In 21 C. J. 942, sec. 74, it is said: "An outstanding title or interest cannot be acquired by the life tenant for his own exclusive benefit. . . . Neither a life tenant, nor one claiming under him, who allowed the property to be sold for taxes, or the satisfaction of an incumbrance or interest thereon, can acquire title adverse to the remaindermen or reversioner by purchasing at the sale himself." The authorities cited in the note to this statement show that the mortgagee of the life tenant cannot purchase at a tax sale and secure a title against the remaindermen.

In Whitfield et al. v. Miles, 101 Miss. 734, 58 So. 8, it was held that a life tenant cannot buy at a tax sale and set it up against the remaindermen, and neither could his wife. See, also, Grace v. Reed, 143 Miss. 427, 108 So. 799, 47 A. L. R. 516; Stewart v. Matheny, 66 Miss. 21, 5 So. 387, 14 Am. St. Rep. 538; Deanes v. Whitfield, 107 Miss. 273, 65 So. 246; Leflore v. Flowers, 117 Miss. 682, 78 So. 513; Fox v. Coon, 64 Miss. 465, 467, 1 So. 629; Cogburn v. Hunt, 57 Miss. 681, and McLaughlin v. Green, 48 Miss. 175.

In 25 R. C. L. at page 1315. under the title of "Subrogation," it is said that: "To entitle one to subrogation, his equity must be strong and his case clear. It is generally held that the doctrine of subrogation requires that the person seeking its benefit must have paid a debt due to a third person before he can be substituted to that person's rights; and that it is not a liability to pay, but an actual payment to the creditor which raises the equitable right to subrogation."

The mortgage of the life tenant to the Federal Land Bank contained a provision that the life tenant would keep the taxes paid and furnish evidence thereof to the mortgagee by January 1st of the year involved, and it also contained a contractual stipulation that, if there was a failure of the mortgagor so to do, the bank could pay

same and foreclose, having a right to advance the deferred payments due under the mortgage.

Other authorities could be cited to sustain this position, but it seems to me that those cited are ample to sustain my views. However, if authorities of other jurisdictions are desirable, they may be found in the following cases: Jeffers v. Sydnam, 129 Mich. 440, 89 N. W. 42; Mansfield v. Neff et al., 43 Utah, 258, 134 P. 1160; Lyman v. Hollister, 12 Vt. 407; American Bonding Co. v. National Mechanics' Bank, 97 Md. 598, 55 A. 395, 99 Am. St. Rep. 466, 467; Mersick v. Hartford, etc., R. Co., 76 Conn. 11, 55 A. 664, 100 Am. St. Rep. 977; Hunt v. Rabitoay, 125 Mich. 137, 84 N. W. 59, 84 Am. St. Rep. 563; Pruitt v. Holly, 73 Ala. 369, and Mason v. Wingate, 275 Ill. 117, 113 N. E. 975.

In addition to what has been said, the redemption by the mortgagor deprived the remaindermen of their right to bring action for waste and to terminate the estate of the life tenant. When the mortgagor redeemed, this right was cut off. See 21 C. J. 971, sec. 118, and McMillan's Lessee v. Robbins, 5 Ohio 28.

These views might be sufficient to answer all that has been said in Judge GRIFFITH's opinion, but, if there was any duty devolving upon the remaindermen to pay the taxes to prevent the title from vesting in the purchaser at the tax sale, the duty certainly was no greater on the remaindermen than on the mortgagor. The remaindermen owed the mortgagor no duty with reference to paying the taxes.

If the mortgagee had a right to a separate estate from the life tenant, he could redeem his separate estate under sections 3264-3266 of the Code of 1930, but I do not contend that the mortgagee had any rights other than such as would be derived from the life tenant, and the law contemplates that the life tenant should bear the burden of the taxes and that the asssessment of the lands should be to the life tenant. This assessment is of the whole fee, and the life tenant is to pay the taxes on the whole fee

to preserve his own estate, because he is in possession, receiving the rents, profits, and usufructs of the entire estate during his life.

As this case has been sent here to settle the principles, I think that the court below should either appoint a receiver to take charge of the property during the life estate, and apply the profits therefrom to the discharge of the taxes, or order a lien to be declared upon the life estate and a foreclosure, in default of payment, and sale to pay the amount of the decree.

The life estate in this case is still existing, and its further duration could be ascertained by the life expectancy, and there may elapse a considerable period of time before the rights of the remaindermen accrue.

I desire to stress the rule of equity that the doctrine of subrogation will not be applied where innocent persons will be injured. The minor remaindermen in the case at bar are of tender years whose rights may be materially injured by presently enforcing any kind of lien on their estate—the fee. In fact, I cannot see how it can be accomplished effectively without casting a cloud upon their title.

May the Federal Land Bank foreclose as to the interest—a life estate—and the purchaser be freed from the obligation to pay the taxes accrued or to accrue?

My view is that the Federal Land Bank must be held to have paid these taxes for its own benefit in order that it might have its security enforced or preserved against the life estate.

These minors made no agreement with the Federal Land Bank as to the payment of these taxes by it, if, indeed, any such agreement could have been made by them or for them by the chancery court.

There is no room to invoke here either legal or conventional subrogation against the estate of these minors.

Therefore it is wholly inequitable and unjust to charge the remaindermen with any part of these taxes until, at least, the life estate has been exhausted.

I think the judgment should be reversed for a decree in accordance with these views.

CONCURRING OPINIONS.

**McGowen, J.**, (concurs in this dissent).

[The CHIEF JUSTICE concurs in the main with this opinion, but prefers to express no opinion as to the right of the appellant to have a receiver appointed to take charge of the land and apply the rents and profits therefrom to the reimbursement of the appellant for the money expended by it in redeeming the land from the tax sale.]

**Smith, C. J.**, delivered an opinion concurring in this dissent.

I concur in the main with what Judge ETHRIDGE has here said, but I prefer to express no opinion as to the right of the appellant to have a receiver appointed to take charge of the land and apply the rents and profits therefrom to the reimbursement of the appellant for the money expended by it in redeeming the land from the tax sale.